27 C.C.P.A. (Patents)

### In re LAMMCHEN.
### Patent Appeals No. 4345.

Court of Customs and Patent Appeals.
June 24, 1940.

E. D. Phinney, of New York City (Paul R. Adams, of New York City, of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner rejecting as unpatentable over prior art cited three claims numbered, respectively, 6, 7, and 8, of appellant's application for a patent relating to high frequency inductance coils.

Claim 6 is quoted as illustrative of the subject matter: "6. A high frequency inductance element comprising an air core coil and a disc of high frequency iron at each end thereof, said discs having a greater diameter than said coil and being positioned just beyond the ends of the windings forming the said coil so as to provide a return path for the stray flux, in close proximity to the coil, whereby the current distribution on the coil circumference is improved and the skin effect in the coil is diminished."

Claim 7 adds to claim 6 the feature of an annular channel in the face of each coil adjacent to and substantially in line with the coil. Claim 8 adds to claim 6 the feature of a screening pot.

Other claims were before the examiner who rejected them but no appeal was taken to the board respecting them.

The references cited are: Biermanns, 1,758,820, May 13, 1930; Polydoroff, 1,940,228, December 19, 1933; Polydoroff, 1,982,689, December 4, 1934; Crossley et al., 1,978,568, October 30, 1934; Vogt (Br.), 421,353, December 13, 1934.

Each of the references was analyzed by the examiner as to the features deemed applicable to the issue. The board regarded the Vogt patent as being the most pertinent, and held that it "fairly anticipates the inventive concept as expressed in claims 6, 7 and 8," but did not overrule the other references.

While the brief filed before us on behalf of appellant is quite elaborate, the issues are comparatively simple.

It will be observed from claim 6 that the iron discs which provide a return path for the stray flux are positioned just beyond the ends of the windings forming the coil, in close proximity to the coil. As interpreted by appellant, we assume correctly, this means that there is no iron within the coil, and the major portion of the argumentative part of appellant's brief is devoted to pointing out the advantages claimed for this arrangement.

The board discussed this feature as follows: "The Vogt patent describes a high frequency inductance coil and on page 1, line 17, refers to it as 'practically without stray field.' Also in line 104 the patentee describes an air gap 8 between the two core members, the width of which may be varied. While the core members extend within the coil and therefore the inductance of the coil is affected by this adjustment, it seems to us the patentee has disclosed the inventive concept expressed in the appealed claims in providing discs at each end of an inductance coil which extend beyond the core windings to provide a return path for stray flux. The fact that the patentee shows cores extending within the coil seems to us relatively unimportant."

Appellant argues before us that the Vogt patent discloses a magnetic dust structure which forms both an inner core and a surrounding shell for the windings of the inductance device; that the iron dust material forms an almost completely closed magnetic circuit excepting for two small air gaps; that in any core whether a small air gap is provided within the coil or not, it is apparent that a large amount of material is disposed within the coil; that it is physically impossible to adjust the Vogt device so that there is no iron in the coil and that "By no possible interpretation can the Vogt reference be considered as disclosing an air core inductance device having end discs wholly beyond the coil."

We do not understand the board to have held more than that it considered the showing of cores extending within the coil "relatively unimportant."

However this may be, we do not find it necessary to pass upon the question of whether the claim properly might be rejected on Vogt alone, assuming that the board itself did that, because there are other references which the board did not overrule, among them being the patents to Polydoroff.

The examiner rejected claim 6 for the same reasons that he rejected a claim numbered 1 (not on appeal) which ex-

pressly defined a "coil without inner iron core." In the course of his discussion he said:

"Polydoroff 1,940,228, Polydoroff 1,982,689. These references disclose air core inductance coils having 'high frequency iron' introduced into and around the coils as little or much as may be desired. The 'core' may have the portion near the center of the coil consisting chiefly of insulation, and the outer portion chiefly of iron. Such a core even when fully inserted affords mainly an air-core coil with iron adjacent the coil end, since 'air-core' in this art means simply a nonmagnetic core, consisting of air and other insulation.

"Further, the core may be inserted or withdrawn according to the use of the coil. When the core is fully withdrawn, the coil has no iron at all within it, the only iron being at the coil end. The exact amount of iron within and without the coil depends on the frequency involved, and is varied as desired."

After first rejecting the claim on the patent to Biermanns, the examiner continued: "The claim also stands rejected as unpatentable over Vogt, in view of Polydoroff. A glance at the figure of this application and at Fig. 1 of Vogt shows that the only possible difference readable into this claim which might distinguish over Vogt is that the Vogt reference is with iron core, while applicant's device is 'without' iron core. Actually, both devices have inner iron cores, differing only in their extent. As the Polydoroff references teach clearly that core elements may extend into coils as little or much as desired, it seems obvious that the Vogt core elements similarly may extend into the coil as little as desired. Such structure clearly anticipates this claim."

The brief of the attorney for the Commissioner of Patents before us described, even more specifically than did the examiner, certain features disclosed by Polydoroff patent, No. 1,940,228, as follows: " * * * in the Polydoroff patent * * * there are shown coils in Figures 4 and 5 which have iron inside the coils but not at the ends. In Figure 6 there is shown a coil which has iron both inside the coil and outside the ends of the coil. In Figure 7 there is shown a form where there is no iron at all inside the coil but there is iron (14) at one end of the coil. The arrangement shown in Figure 7 of the same also indicates that the core (14) can be moved in and out. That is, the patent clearly discloses that the amount of iron projecting inside the coil can be adjusted to suit the desires of the workers skilled in the art."

■ Appellant's analysis of the Polydoroff patents and the arguments based thereon have been carefully scrutinized. The patents do not show the precise structural arrangement claimed by appellant. No one of the references does. If any one of them did, of course, we probably would not have the case before us, but a mere difference in arrangement does not of itself involve invention. Referring to the Polydoroff patents the brief on behalf of appellant says:

"There is no teaching in either of these patents to the effect that an iron dust structure wholly outside of the winding produces any beneficial result. Rather, the teaching is merely that a variation may be obtained by moving the plunger in and out. Therefore, although the Polydoroff patents do teach the expert to construct a variable inductance device which might during some intervals possess a plunger disposed outside of the winding, there is nevertheless no suggestion that while so positioned the magnetic material performs any useful function. If it were desired to use the coil fixed at minimum inductance the iron would be completely discarded. So far as Polydoroff taught the iron in applicant's device would be completely useless. * * *

"Even when considered as a purely term anticipation, the Polydoroff structure is clearly deficient, since it totally fails to suggest a disc-shaped member positioned at one end of the coil and a fortiori fails to suggest two discs positioned respectively at two ends of the coil just beyond the ends of the windings."

■ The foregoing argument goes to the matter of result, but all the claims on appeal are for structure. That a patent may not be based on results alone is an elemental rule of patent law.

■ It is not disputed that the "channel" feature of claim 7 is disclosed by Vogt, but it is argued that if his "shell" be considered as a grooved disc it would not be positioned beyond the winding. We do not think it would involve invention to position it beyond the winding, especially in view of the other prior art.

The examiner pointed out that the "screening pot" is "used by Crossley and Vogt with similar inductances." We do not find in appellant's brief any reference to the Vogt showing in this regard, and the comments with respect to the Crossley showing is, in substance, that it differs from that of appellant's in the results obtained.

We are not convinced that the claims were improperly rejected.

The decision of the board is affirmed.

Affirmed.